Burke, J.
 

 The question presented on this appeal is one of priority between a United States Government tax lien and the lien of a pledgee of various life insurance policies. At issue is the question of whether the Government’s filing its notice of lien in the county of residence of the taxpayer sufficed under section 240 of New York’s Lien Law to obtain for it priority over the pledgee’s liens against the policies for repayment of advances made subsequent to the filing of notice of the Government’s lien. The parties are agreed that section 240 is controlling
 
 [1]
 
 and that, if the Government’s notice of lien was filed in accordance with section 240, it takes priority.
 

 The background of this controversy is rather complex, but the essential facts are as follows: On November 13, 1953, the Government filed a notice of lien with respect to income taxes previously assessed against one Fynke (the taxpayer) in the office of the Clerk of Nassau County, Fynke’s place of residence. There is presently due the Government from Fynke over $93,000 in back taxes. Prior to the date the Government filed its notice of lien Fynke had assigned to the Bankers Trust Company (or its predecessor) life insurance policies having a cash surrender value of $36,000 and the bank had in turn advanced to Fynke (individually or on his guarantee) various amounts resulting in an unpaid balance of $13,000 at the date the lien was filed. (The Government does not dispute the bank’s right to priority as to the $13,000 owed it before the filing of the Government’s lien.) Subsequent to November 13, 1953, three additional policies, having a cash surrender value of $7,600, were assigned by Fynke to the bank and Bankers Trust made additional advances to Fynke resulting in a further unpaid balance
 
 *556
 
 of $29,000. In the Fall of .1960 the Government gave actual notice of its lien to the several insurance companies involved. Thereafter Bankers Trust in July, 1961 refused to renew Fynke’s notes and proceeded to cancel and collect upon the policies that had been pledged with it. The Equitable Life Assurance Society had some question about whether to pay the bank or the Government and it resisted payment. Bankers Trust brought suit against Equitable, which was allowed to pay the cash surrender value of the policies into court, and the Government intervened.
 

 On these facts the majority in the Appellate Division held that the bank’s lien was superior to that of the Government for the reason that the Government had failed to file its notice of lien in New York City where a number, though not all, apparently, of the policies were physically located on November 12, 1953 (in the possession of the pledgee bank). The basis for this holding was the then requirement of subdivision 2 of section 240 that the Government file its notice of lien in the county where the property is located, if it is located within New York City, as well as in the county of the taxpayer’s residence. (The statute as amended effective July 3, 1966 now has no such requirement. Place of filing follows simply residence.)
 

 Reasoning by analogy to cases in which jurisdiction was at issue or in which 11 commercial specialties ’ ’ such as bills of exchange or promissory notes were involved, the majority below was of the opinion that the situs of a taxpayer’s “ property” in the cash surrender value of his insurance policies should be determined by the physical location of the instruments themselves. We, however, are not inclined to follow this approach, preferring, rather, the analysis of Justices Stetjeb and Botein in their dissent.
 

 The dissenters below recognized, as Chief Judge Cabdozo observed in
 
 Severnoe Securities Corp.
 
 v.
 
 London & Lancashire Ins. Co.
 
 (255 N. Y. 120), that the situs of intangibles is in truth a legal fiction and that while there are times when justice or convenience requires that a legal situs be ascribed to them, at the root of the selection process there is
 
 “
 
 generally a common sense appraisal of the requirements of justice and convenience in particular conditions ”
 
 (supra,
 
 p. 123). In addition, as Judge Cabdozo observed, determination of situs for one purpose has no necessary bearing on its determination for another
 
 *557
 
 purpose (see 255 N. Y., p. 121) which, of course, follows if determination of situs is to be. made upon the, basis of considerations of “ justice and convenience in particular conditions Stated another way, the problem is
 
 ‘ ‘
 
 fundamentally a question of ease of administration and of equity.” (See
 
 Texas
 
 v.
 
 New Jersey,
 
 379 U. S. 674, 683, concerned with determination of situs of intangible personal property for escheat purposes.)
 

 Upon examining the presumed legislative purpose behind section 240, to wit, provision of notice to persons intending to deal with one seeking credit that the Government has a claim against him for unpaid Federal taxes, warning the prospective creditor, should he inquire, that his claim will be subordinate to that of the Government, it seems clear that the lender’s interest can be fully served by requiring only that the lien notice be filed in the taxpayer’s county of residence and that there is no need for inconveniencing the Government by requiring it to track down whatever of the taxpayer’s intangible assets might have found their way into New York City. This rule has the virtues of simplicity and certainty and its wisdom is further testified to by the subsequent amendment of section 240 to eliminate any requirement of filing at the place of location of the taxpayer’s property. For purposes of determining the situs of these insurance policies under section 240, then, we hold that their situs follows that of the insured’s residence.
 
 [2]
 

 Accordingly, the order of the Appellate Division should be reversed and the case remanded to Special Term for entry of judgment in the Government’s favor for all sums realizable out of the cancellation of these policies over and above the unpaid $13,000 advanced by Bankers Trust prior to the filing of the Government’s notice of lien.
 

 Chief Judge Fuld and Judges Van Voorhis, Scileppi, Berg an and Keating concur; Judge Breitel taking no part.
 

 Order reversed, without costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein.
 

 [1]
 

 . State law is controlling here by virtue of section 3672 (snbd. [a]) of the 1939 Internal Revenue Code (now § 6323, subd. [a] under the 1954 Code), constituting a permissive grant of authority to the States to legislate on this subject. .... . , ,
 

 [2]
 

 . It ought to foe noted that the result we reach here is consistent with that which will in the future obtain under Federal law as a result of the 1966 amendments to the Internal Revenue Code. (See Pub. L. 89-719, 80 U. S. Stat. 1125, Nov. 2, 1966, amdg.,
 
 inter alia,
 
 § 6323 of the 1.954 Code.)