UNITED STATES of America, Plaintiff,

v.

COLBY ACADEMY; Aetna Casualty and Surety Company; Normesh Construction Corporation; Roger W. Kohn; and Jack Du Boff Associates, Inc., Defendants.

No. 77 C 2163.

United States District Court,
E. D. New York.

Sept. 10, 1981.

Edward R. Korman, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for plaintiff; Michael G. Cavanaugh, Asst. U.S. Atty., and Karen B. Brown, U.S. Dept. of Justice, Tax Division, New York City, of counsel.

Harold N. Eder, New York City, for defendant Normesh Construction Corp.

Kraditor & Haber, New York City, for defendant Jack Du Boff Associates, Inc. by Roger S. Haber, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This is an action brought by the United States of America ("the government") to enforce certain tax liens assessed against taxpayer-defendant Colby Academy ("Colby"). The liens amount to over $33,000, but the real purpose of this action is to determine who is entitled to the sum of $11,333.34 representing the proceeds of a casualty policy insuring Colby and written by defendant Aetna Casualty and Surety Company ("Aetna"). The proceeds are also claimed by defendants Normesh Construction Corporation ("Normesh") and Jack Du Boff Associates, Inc. ("Du Boff"), both of whom received assignments of a portion of the proceeds.

The government has moved for summary judgment and has submitted extensive documentation of its claims. Since defendants Colby, Aetna and Roger W. Kohn claim no interest in the proceeds, the sole question presented on the motion is whether under 26 U.S.C. §§ 6321–23 the interests of Normesh and Du Boff are subordinate to that of the government. For the reasons which follow, the Court is of opinion that the government is entitled to partial summary judgment to the extent indicated below.

The following essential facts are not in dispute. Between 1973 and 1976 the government made a series of assessments against taxpayer Colby for unpaid withholding and Federal Insurance Contributions Act taxes, with contemporaneous notices of demand for payment. As to each of these assessments the government filed a notice of federal tax lien with either the Register's Office for Kings County, where Colby is located, or with the New York Secretary of State in Albany, or in both these State offices. In sum, the assessments were made and notices filed on the following dates and, with penalties and interest computed as of September 10, 1981, represent liens in the following amounts:

| Tax Period | Date of Assessment & Notice of Demand | Date of Filing of Notice of Lien* | Balance Due, with Interest and Penalties |
|---|---|---|---|
| 1st Qtr. 1973 | 8/13/73 | 11/1/73 11/2/73 | $1,167.44 |
| 2d Qtr. 1973 | 10/1/73 | 11/1/73 11/2/73 | $2,883.23 |
| 3d Qtr. 1973 | 12/1/73 | 12/19/73 12/17/73 | $7,192.17 |
| 1st Qtr. 1974 | 7/1/74 | 1/27/75 | $6,280.86 |
| 2d Qtr. 1974 | 9/30/74 | 1/27/75 | $1,729.43 |
| 4th Qtr. 1974 | 3/31/75 | 4/14/75 | $3,501.55 |
| 1st Qtr. 1975 | 9/8/75 | 10/10/75 | $6,227.54 |
| 2d Qtr. 1975 | 9/8/75 | 10/10/75 | $4,161.10 |
| 4th Qtr. 1975 | 3/29/76 | 4/8/76 | $2,462.53 |

* Where two dates appear, they represent, respectively, filings in the Kings County Register's Office and in the Office of the New York Secretary of State.

Affidavit of Robert E. Mirsberger, dated July 28, 1980, Plaintiff's Exh. 1, at ¶ 4; Letter dated Sept. 1, 1981, John F. Murray to the Court. These tax liens were also filed in the public index located at the Office of the District Director, Internal Revenue Service, Brooklyn, New York, on June 30, 1977. Affidavit of Karen B. Brown, dated July 31, 1980, at ¶ 5.

On or about March 15, 1974, Aetna issued to Colby a policy insuring against loss of tuition resulting from damage to the school's premises, Plaintiff's Exh. 2, which were owned by and rented from one Samuel Zarcone. The premises were damaged by a fire on July 5, 1974. That same day, Du Boff, an insurance claims adjuster, was retained by the Dean of Colby to prepare and present Colby's claims to the three companies, including Aetna, which had written policies in favor of Colby. As payment for these services, the agreement assigned to Du Boff 12½% of the monies recovered.[1] Plaintiff's Exh. 4. It appears that on November 11, 1974, Du Boff prepared a notice of claim. Plaintiff's Exh. 5. Pursuant to this assignment, Du Boff now claims the sum of $929.71.

On July 24, 1974, Normesh entered into an agreement with the owner of the Colby premises, Zarcone, to make certain repairs following the fire. The agreement provided that $4,500 would be paid within 60 days and the balance of "$9,000.00 when fire loss is paid." Plaintiff's Exh. 9. By an instrument dated "December 1974," Zarcone as "administrator" for Colby assigned to Normesh the proceeds of the insurance policies to the extent of $13,845. Plaintiff's Exh. 7. Pursuant to this document, and apparently after partial payment, Normesh now claims $8,500 of the proceeds of the Aetna policy.

Colby instituted suit against Aetna on the policy, and judgment in favor of the insured in the amount of $17,000 was entered in Supreme Court, Kings County, on April 22, 1976. On the consent of all parties, including the government, a fee of $5,666.66 was paid to defendant Roger W. Kohn, Colby's attorney in the suit against Aetna, leaving a fund of $11,333.34, which is the subject matter of this action.

Turning to the applicable principles of law, a federal lien imposed pursuant to 26 U.S.C. § 6321 for non-payment of a tax attaches at the time of assessment and continues until the tax deficiency "is satisfied or becomes unenforceable by lapse of time." 26 U.S.C. § 6322. A federal tax lien, moreover, attaches to all property rights of the taxpayer, including his interest in future proceeds of an insurance policy. *P.P.G. Industries Inc. v. Hartford Fire Ins. Co.*, 384 F.Supp. 91 (S.D.N.Y.1974),

1. The record in this action to date does not reflect the outcome, if any, of Colby's claims against the two other insurance companies.

Presumably, by the terms of Du Boff's retainer, the adjuster would be entitled to 12–½% of any proceeds of those policies.

*aff'd*, 531 F.2d 58 (2d Cir. 1976); *Household Coal & Oil Distributors, Inc. v. NEDC, Inc.*, 234 N.Y.S.2d 6, 9 (Civil Court, New York County 1962). See *Glass City Bank v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). Under the common law rule of "first in time, first in right," it is settled that a federal tax lien will take priority over all competing interests except those that were "choate" prior to the attachment of the federal lien. *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1953). See *United States v. Equitable Life Assurance Society*, 384 U.S. 323, 328, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966). A lien is considered choate when "the identity of the lienor, the property subject to the lien, and the amount of the lien" are established, *United States v. City of New Britain, supra*, 347 U.S. at 84, 74 S.Ct. at 369. Moreover, the nature of the property interest giving rise to the competing claim must be determined by reference to State law. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). See *Hartford Provision Co. v. United States*, 579 F.2d 7, 9 (2d Cir. 1978).

■ Under New York law, the assignment of a future interest in the proceeds of a claim is an equitable interest only, and does not become a legal assignment until the proceeds have come into existence. *Harold Moorstein & Co. v. Excelsior Ins. Co.*, 25 N.Y.2d 651, 306 N.Y.S.2d 464, 465, 254 N.E.2d 766, (1969). See *Fairbanks v. Sargent*, 117 N.Y. 320, 22 N.E. 1039 (1889); *P.P.G. Industries, Inc. v. Hartford Fire Ins. Co., supra*, 384 F.Supp. at 95 (S.D.N.Y.1974), *aff'd*, 531 F.2d at 63 n.7 (2d Cir. 1976). The assignment of the proceeds of an insurance policy, the amount of which has yet to be determined, creates only an equitable interest that becomes legal and choate when there is a judgment or appropriation of the proceeds in favor of the insured-assignor.

See *Fairbanks v. Sargent, supra*, 117 N.Y. at 336–37, 22 N.E. 1039; *P.P.G. Industries, Inc. v. Hartford Fire Ins. Co., supra; Bernstein v. Allstate Ins. Co.*, 288 N.Y.S.2d 646 (Civil Court, New York County, 1968). Finally, the ripening of an equitable lien into a legal lien does not relate back to the date of execution of the original assignment. *Cordaro v. Cordaro*, 18 A.D.2d 774, 235 N.Y. S.2d 289, 290 (App.Div. 4th Dept. 1962), *aff'd*, 13 N.Y.2d 697, 241 N.Y.S.2d 175, 191 N.E.2d 676 (1963).

■ Applying these principles, the proceeds of the insurance claim did not come into existence—and Normesh's and Du Boff's naked assignments ripen into choate claims—until the April 22, 1976 judgment in favor of Colby.[2] It is clear that each of the government's tax claims were assessed and its liens thereby attached prior to that date.

■ Nonetheless, Normesh seeks to benefit from a statutory exception to the "first in time, first in right" ordinary rule regarding priority. Section 6323(a) of Title 26 provides that a federal tax lien created upon assessment shall not defeat that of a

> "purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) [of § 6323] has been filed by the Secretary or his delegate."

In an attorney's affidavit, Normesh claims to have filed a mechanic's lien on December 19, 1974. Eder Affidavit, dated August 29, 1980, at 2. Even though this assertion—which we note is unsupported by documentary materials as required under Rule 56(e), F.R.Civ.P.—may be sufficient to create an issue of fact, the Court is of opinion that it fails to raise a legally *material* issue that could preclude a grant of partial summary judgment for the government as to the first three tax liens.

---

**2.** But see *MDC Leasing v. New York Property Ins. Underwriting*, 450 F.Supp. 179, 181 (S.D.N.Y.1978), *aff'd mem.*, 603 F.2d 213 (2d Cir. 1979), where the district court stated in dicta that certain interests by assignment in insurance proceeds may have become choate, for purposes of priority with regard to federal tax liens, at the time of filing of a proof of loss. It does not appear in that case, however, that subsequent litigation and judgment were necessary to bring the proceeds into existence.

■ Even if Normesh could claim protection under § 6323(a), it would not prevail over those tax liens filed pursuant to § 6323(f) *prior* to the claimed attachment of the mechanic's lien. At the very earliest, Normesh's interest arose at the time of the assignment and filing of the lien in December 1974. Each of the federal liens assessed for the first, second and third quarters of 1973 were filed in November or December 1973, in both the Kings County Register's Office and the Office of the New York Secretary of State. These filings satisfied the requirements of § 6323(f), see *In re Busman*, 5 B.R. 332 (Bkrtcy.E.D.N.Y.1980); see also *Bankers Trust Co. v. Equitable Life Assurance Society*, 19 N.Y.2d 552, 281 N.Y. S.2d 57, 227 N.E.2d 863 (1967); and the government has met subsequently imposed filing requirements.[3] As to these three tax liens, there are no genuine issues of fact and it is clear as a matter of law that the government's claim is prior to that of Normesh and Du Boff.

■ The first three tax liens, with interest and penalties through the entry of partial judgment as of the date of this memorandum and order, total $11,242.84, and constitute almost all of the proceeds of the Aetna policy. However, as to the $90.50 remaining after the satisfaction of the first three liens, a genuine issue of material fact precludes the grant of complete judgment at this time.

If, as claimed, Normesh perfected a valid mechanic's lien in the proceeds as of December 1974, 26 U.S.C. § 6323(a) would appear to afford it priority over the next unsatisfied tax lien, assessed for the first quarter of 1975, which was not filed until January 27, 1975. Even though the proceeds of the policy may not have been ascertained exactly until the April 1976 judgment in favor of Colby,

"the requirement of choateness does not relate to the property against which a state lien is asserted but only to the lien itself. A state-created lien is not inchoate merely because the amount or value of the liened property has not been finally determined."

*Corigliano v. Catla Construction Co.*, 231 F.Supp. 245, 249 (S.D.N.Y.1964). See *Crest Finance Co. v. United States*, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961). See also *Fox Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 452 F.2d 1346, 1350 & n.18 (U.S.App.D.C.1971).

If Normesh can demonstrate that in 1974 it perfected under New York law a lien in the policy proceeds that was definite as to "the identity of the lienor, the property subject to the lien, and the amount of the lien," *United States v. City of New Britain, supra,* the Court will consider the government's arguments as to why judgment in the remaining $90.50 should not be entered in Normesh's favor.

Accordingly, the government's motion for summary judgment is granted to the extent indicated in this memorandum order. Since it appears that interest on the first three liens will continue to accumulate unless judgment is entered, the Court finds that there is no just reason for delay and will direct that partial judgment be entered forthwith in the amount of these liens plus penalties and interest through the date of this memorandum and order. Rule 55(b), F.R.Civ.P.

In addition, Normesh is directed to submit any additional materials by October 2, 1981, and the government is directed to submit its response, if any, by October 16, 1981.

SO ORDERED.

The Clerk of the Court is directed to enter partial judgment in favor of the government in the amount of $11,242.84.

---

**3.** Public Law 94–455, § 2008(c)(1)(A), added new § 6323(f)(4) requiring an additional filing of notices of tax liens with the office of District Director, Internal Revenue Service. For tax liens that had previously been filed, such as those involved here, the amendment was made effective July 1, 1977. The government duly filed notices pursuant to this amendment on June 30, 1977. We find no merit in Normesh's argument, which has no support in the statutory language, that this amendment destroyed the priority, *ex post facto*, of all tax liens previously filed under then applicable law.